OF THE

## STATE OF IOWA.

AT

## DES MOINES, JANUARY TERM, A. D. 1903.

AND IN THE FIFTY-SEVENTH YEAR OF THE STATE.

---

MILLSPAUGH LAUNDRY v. FIRST NATIONAL BANK OF SIOUX CITY, Appellant.

Good Will: DEFINED. The good will of a business is defined to be "the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position or common celebrity."

To What Attaches. Good will is not necessarily connected with the premises where the business is carried on, but is identified with the enterprise itself.

Conversion of Good Will: USE OF NAME. The name under which a laundry business is run is connected with its good will, but where a mortgage covering all of the tangible property in

NOTE—The figures on the left of the syllabi refer to the corresponding figures placed on the margin of the case at the place where the point of the syllabus is decided.

connection with a laundry operated under the name "Millspaugh Laundry" is legally foreclosed and the property purchased by the mortgagee and the business afterwards conducted by it in the same place under the title "National Laundry, formerly owned by Millspaugh", there is no conversion of the good will by such use of the name.

Same: CONTINUING THE BUSINESS.  Continuing the business at the same place by the purchaser at a mortgage sale of the tangible property used in connection therewith, and soliciting the customers of the former proprietor, do not constitute a conversion of the good will.

*Appeal from Woodbury District Court.*—HON. J. F. OLIVER, Judge.

THURSDAY, APRIL 9, 1903.

ACTION for the conversion of the name and good will of plaintiff. The jury allowed $355 damages, less a counterclaim of $105 for rent, and judgment was rendered against defendant for $250. The defendant appeals.—*Reversed.*

*Irwin & Hultberg* for appellants.

*L. M. Kean* and *Charles A. Dickson* for appellee.

LADD, J.—One Millspaugh owned the machinery, tools, fixtures, and wagons used in operating a laundry in Sioux City, and in 1898 sold the same to E. H. Mann, from whom he took a note for $4,000 of the purchase price, secured by a chattel mortgage on the property. These papers were assigned to the defendant. Mann does not appear to have been successful in the venture, and in November of the same year surrendered the plant to Millspaugh. Thereupon the plaintiff company was organized, with a nominal capital stock of $4,500, divided into shares of $100 each, though but three were issued, for which no money was paid. Without capital or property, it took possession, under an arrangement with Millspaugh, not disclosed,

November 19, 1898, and operated the plant until September 19, 1899, at a loss of about $3,000, when the property covered by the mortgage was seized thereunder by defendant, and disposed of ten days later at foreclosure sale. Aside from a few articles used in operating the plant, valued at $42, which has been paid, this mortgage covered all the tangible property, in the possession of the company and connected with the laundry, even to the sign "Millspaugh Laundry," over the door, and the wagons stamped with the same sign. The good will of plaintiff was not included, however, as the corporation was organized after the instrument was executed. Manifestly, that was connected with the location and the operation of the plant, and was subject to any interference which might result from the lawful exercise of the power conferred by the execution of the mortgage. Of the mortgagee's rights the company was charged with notice, and, as the foreclosure proceedings were regular and legal, the defendant was guilty of no wrong in seizing and selling all the property. For so doing the bank is not criticised. The fault found with it is that in accomplishing this object it also converted to its own use the name and good will of the plaintiff. Our inquiry must be directed, then, to ascertaining precisely in what plaintiff's good will consisted, and the manner in which this, with its name, was made use of by the defendant. Though intangible in their nature, these are esteemed by the law as valuable, transferable, and proper subjects for the protection of the courts.

Some difficulty has been experienced in determining precisely what "good will" really is. Lord Eldon thought it "no more than the probability that the old customers will result to the old place." *Cruttwell v. Lye*, 17 Ves. 335. In *Churton v. Douglas*, 1 Johns. Eng. Ch. 174, this definition was pronounced too narrow, and good will was held to include every positive advantage acquired, arising out of the business of the old

1. Good will: defined.

firm, whether connected with the premises where it was carried on, the name of the late firm, or with any other matter carrying with it the benefit of the business of the old firm. This, again, was declared too limited in *Slack v. Suddoth*, 102 Tenn. 375 (52 S. W. Rep. 180, 45 L. R. A. 589, 73 Am. St. Rep. 881), when applied to the good will of a partnership to practice a profession, since it leaves out of view the advantage to be gained from professional standing and reputation of the partners themselves, which constitutes the principal feature of value in such partnerships; the court saying that "no forced sale or transfer can be made of a good will when it is based upon professional reputation and standing or upon business connections"; adding that "good will implies something gained by consent, not something realized by force or coercion." In *Vonderbank v. Schmidt*, 44 La. Ann. 264 (10 South. Rep. 616, 32 Am. St. Rep. 336, 15 L. R. A. 462, containing a valuable note), the authorities are reviewed, and many of the definitions found in the books quoted, with the conclusion "that good will is an advantage or benefit which is acquired by a business establishment beyond the mere intrinsic value of the capital stock; that it is the general public patronage and encouragement which a business receives from its customers on account of its local position; that it is the subject of price and value, and of bargain and sale, though intangible." This definition seems to have been extracted from *England v. Downs*, 6 Beav. 269, where it is described to be "the advantage or benefit which is acquired by an establishment, beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position or common celebrity." This has the merit of being so comprehensive as to cover almost every conceivable case, and, with unimportant variations, has been quite generally

approved.   See Story on Partnership, section 99; *Smith v. Gibbs*, 44 N. H. 343; *Bell v. Ellis*, 33 Cal. 624; *Boon v. Moss*, 70 N. Y. 473; *Angier v. Webber*, 14 Allen, 221 (92 Am. Dec. 748); *Morgan v. Perhamus*, 36 Ohio St. 522 (38 Am. Rep. 607); *Rice v. Angell*, 73 Tex. 350 (11 S. W. Rep. 338, 3 L. R. A. 769); 14 Am. & Eng. Ency. of Law, 1085. See, also, *Williams v. Farrand*, 88 Mich 473 (50 N. W. Rep. 446, 14 L. R. A. 161).

It is to be observed that good will, though often connected with the premises on which the business or trade is conducted, is not necessarily so.   See *England v. Downs*, supra, and *Journe's Succession*, 21 La. Ann. 391, where it was said to be incident to the stock and license.   And so with a laundry doing work for customers out of town, or even in the city.   They ordinarily know and care nothing concerning the place of its business within the corporation.   The reputation or the celebrity of the character of the work done, or the manner of doing it, may be the only inducement.   But while not necessarily incident to the location, it is necessarily connected with the enterprise carried on; and this is all that was held in *Moorehead v. Hyde*, 38 Iowa, 382, where the court observed that "the good will of a trade or business may be the subject of bargain and sale, when connected with any specific stock in trade, or with some valuable secret of trade, or with a well established business."   An examination of the authorities already cited will illustrate the extent to which the courts have gone in protecting good will, whether retained by those responsible for its growth, or in the keeping of a transferee.

2.  To what attaches.

The name, too, of an established enterprise, is regarded as of importance, and the right to its exclusive use generally recognized.   The *Iowa Seed Co. v. Dorr*, 70 Iowa, 481; *Williams v. Farrand, supra*; *Vonderbank v. Schmidt, supra*; *Fish Bros. Wagon Co. v. La Belle Wagonworks*, 82 Wis. 546 (52 N. W. Rep.

3.  Conversion of good will: use of name.

595, 16 L. R. A. 453, 33 Am. St. Rep. 72); *Armington v. Palmer*, 21 R. I. 109 (42 Atl. Rep. 308, 43 L. R. A. 95, 79 Am. St. Rep. 786). In a case like this the name is not in the nature of a trademark, and of necessity is closely connected with the good will. It is the designation by which the company is known and addressed by its patrons. And the good will is the probability, regardless of its foundation, that the patronage of these will be continued. No claim is made that plaintiff was improperly deprived of the premises in which the laundry was operated. Indeed, as a counterclaim for rent was allowed by the court, we take it that its occupancy was rightly terminated. How, then, was this bank able to seize these intangible things and convert them to its own use? As already observed, it had the right to take the possession of all the tangible property in the keeping of the company, and this of necessity terminated the business. Thereby it was deprived of the machinery and tools essential to carry on the enterprise. But all this was incidental to the power conferred by the mortgage to which the plaintiff's rights were subject. No liability, then, accrued for any injury to the good will resulting from the termination of its business, and seizing the premises in which conducted. Nor is defendant shown to have appropriated the company's name. It continued the laundry, making use of stationery headed, "National Laundry, formerly owned by Millspaugh." That it had been so owned is not questioned. The description was accurate. Possibly Millspaugh might have objected to such use of his name if it in some way interfered injuriously with an enterprise of his own. Plaintiff has not proven an exclusive right to the use of his name in connection with the laundry business. Moreover, if it had been, there was no evidence of any injury whatever to any enterprise or business in which it was engaged.

There is left, then, merely the probability that the customers might continue their patronage. Was this

appropriated by defendant?   No more than in so far as occasioned by the continuance of the business at the old stand, which, as we have seen, it had the right to do.   There is no reason why it might not freely compete for patronage, and it was under no obligation, by contract or otherwise, to refrain from soliciting the customers of the plaintiff.   Whether it wrongfully seized a list of plaintiff's patrons, we have no means of knowing, or of the value of such list if we did know, and therefore we shall not determine whether this would be actionable.   True, one witness says it took possession of certain books and files containing such lists, but whether these were covered by the mortgage was not disclosed. The same witness also testified that the market value of the name, good will, and business of the plaintiff as a going concern at the time seized (insisting on cross-examination that all were estimated together) was from $1,200 to $1,500, and that such value of the name and good will ten days later was from $700 to $1,000.   Our curiosity is not gratified by any information as to the basis of this last estimate.   Another was asked, after describing the gross earnings, "what the good will of the trade would have been—a business of that kind would have been?" and responded, "$1,500 to $2,000."   The only other witness estimated the value of the good will at about the same amount.   On no tenable theory of the case does this evidence furnish the basis for the measure of damages which could be allowed, for, in any event, the defendant was not liable for the destruction of the business, nor for the good will, in so far as it may have been injured thereby, or by occupation of the premises by defendant; and, as seen, it is not in a situation to complain of the use of Millspaugh's name.   The defendant's liability, if any exists, is limited to damages occasioned by the seizure of the list of patrons, and in the absence of proof thereof, or of the

*(margin note:)* SAME: continuing the business.

damages, if any, resulting therefrom to plaintiff, and any argument pertaining to the legal questions involving the subject had best be postponed until properly raised by the record.—REVERSED.