OFFICE OF the ASSESSOR, POTTAWATTAMIE COUNTY, Iowa, by Robert E. HASTINGS, Assessor; et al., Appellants,

v.

IOWA DEPARTMENT OF REVENUE, et al., Appellees.

No. 86–982.

Supreme Court of Iowa.

Dec. 23, 1987.

Frank W. Pechacek, Jr., and Randy R. Ewing of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellants.

Thomas M. Donahue, Asst. Atty. Gen., Des Moines, for appellees.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

SNELL, Justice.

On October 3, 1983, the Iowa Department of Revenue issued final equalization orders, increasing Pottawattamie County rural residential property valuations by seven percent and commercial property valuations in that county by six percent. These orders were appealed to the Iowa State Board of Tax Review which denied relief as did the district court on subsequent judicial review. This appeal followed. Issues regarding the orders increasing the rural residential property valuations have not been pursued on this appeal; accordingly, we are faced only with a challenge to the commercial property valuations increase. The petitioners in this action are the Office of the Assessor of Pottawattamie County, Pottawattamie County, and several taxpayers. Where appropriate hereinafter for simplicity and clarity, we refer to these parties as "petitioners." Likewise, the multiple respondents, Iowa Department of Revenue, Iowa Director of Revenue, Iowa State Board of Tax Review, and Chairman of the Iowa State Board of Tax Review, are referred to hereinafter where appropriate as "respondents."

I. Petitioners level a broadsides attack on the action of the State Board of Tax Review, labeling it's affirmance of the challenged orders arbitrary, capricious, unreasonable, unsupported by substantial evidence, and in violation of statutory provisions. The parties agree that when such a challenge is made to the promulgation of equalization orders, our review is limited by well-established principles. *See Avery v. Peterson*, 243 N.W.2d 630, 632 (Iowa 1976). According to these principles, we apply the standards of Iowa Code section 17A.19(8) to the challenged action in order to determine whether our conclusions are in agreement with those reached by the district court. *Northwestern Bell v. Iowa State Commerce Comm'n*, 359 N.W.2d 491, 495 (Iowa 1984) (quoting *Lefebure Corp. v. Iowa Dep't of Job Serv.*, 341 N.W. 2d 768, 770 (Iowa 1983)). These standards cover the petitioners' attack, as they allow this court to afford relief if the challenged action is "[i]n violation of ... statutory provisions ... unsupported by substantial evidence in the record ... or ... [u]nreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion." Iowa Code § 17A.19(8)(a), (f), (g).

The burden upon petitioners is a heavy one. *Avery*, 243 N.W.2d at 632; *See Appanoose County Rural Taxpayers Ass'n v. Iowa State Tax Comm'n*, 261 Iowa 1191, 1199, 158 N.W.2d 176, 181 (1968). To succeed in their claim that the board's action was arbitrary, capricious and unreasonable, petitioners must demonstrate that the action was without regard to established rules or standards, without consideration of the facts of the case, adverse to evidence as to which there is no room for reasonable differences of opinion, or not based on substantial evidence. *Churchill Truck Lines v. Transportation Regulation Bd.*, 274 N.W.2d 295, 299–300 (Iowa 1979).

II. Petitioners contend the sample of commercial properties used by the department to determine the necessity of the

equalization order was too small, as a statistical matter, to support the resulting order. The equalization order was based upon a sales/assessment ratio study. *See* Iowa Code §§ 421.17(6), 441.47 (1983). In essence, this study compares the sales prices of properties to their assessed valuation and is used to determine whether an equalization is necessary in order to adjust to actual value the assessed valuation of a class of property. *See* Iowa Code § 441.47 (1983); 730 I.A.C. 71.12(3). In the present case, twenty-five appraisals and seven sales were used for comparison purposes with assessed values. Petitioners contend that the total sample size of thirty-two, representing one-and-six-tenths percent of the commercial property in the assessing jurisdiction, was statistically unacceptable.

Iowa Code section 441.47 expressly leaves to the director of revenue the task of formulating rules concerning the proposed use of the assessment/sales ratio study in the equalization analysis. This delegation of authority resulted in the following administrative rule:

71.12(3) *Commercial real estate.*

a. *Use of assessment/sales ratio study.* Basic data shall be that set forth in rule 71.10(421), refined by eliminating any sales determined to be abnormal or by adjusting same to eliminate the effects of factors which resulted in the sales having been determined to be abnormal. The basic data used shall be the assessment/sales ratio study conducted for sales taking place during the calendar year immediately preceding the year in which the equalization order is issued. The director may also supplement the assessment/sales ratio study with appraisals made by department of revenue and finance appraisal personnel for the year immediately preceding the year in which the equalization order is issued. The assessment/sales ratio study including relevant appraisals, if any, shall be used to determine the aggregate actual valuation of commercial real estate in each assessing jurisdiction. The director of revenue and finance may consider sales and appraisal data for prior years if it is determined the use of sales and appraisal data for the year immediately preceding the year in which the equalization order is issued is insufficient to determine market value. If such sales and appraisal data for prior years is used, consideration shall be given for any subsequent changes in either assessed value or market value.

b. *Use of other relevant data.* The director may also consider other relevant data, including field investigations conducted by representatives of the department of revenue and finance to determine the level of assessment of commercial real estate. The diverse nature of commercial real estate precludes the use of county-wide or city-wide income capitalization study.

*Assessors shall provide any known facts or circumstances regarding reported sales transactions and department appraisals which would indicate abnormal or unusual conditions or reporting discrepancies which would necessitate exclusion or adjustment of sales or appraisals from the determination of aggregate actual values. Assessors shall provide those facts within forty-five (45) days of receipt from the department of information concerning sales and appraisal data proposed for assessment/sales ratio and equalization purposes.*

(Emphasis added.)

Initially, we note the general practice appears to be to use a sample equaling two percent of the pertinent property class, although no agency rule mandates this sampling size. The department attempted to follow this general practice here and originally assembled a number of sales and appraisals equal to two percent. These proposed sales and appraisals were mailed to the Pottawattamie County Assessor's office on April 27, 1983. Several properties were removed from this data following the assessor's input, pursuant to administrative rule 71.12(3)(b). However, at the hearing on the tentative equalization notice held on September 26, 1983, more than two months past the deadline for such input, the assessor raised additional complaints

which eventually led to the sample of actual sales being reduced from twenty-seven to seven. This reduction decreased the sample size from two to one-and-six-tenths percent. Accordingly it was petitioner assessor's belated response to the department's notice of the proposed sample, and not the department's dereliction of its statutory and administrative duties, which led to the smaller-than-normal sample size.

Moreover, we cannot say that as a matter of law the sample used was unacceptable. The appropriate use of the sales/assessment ratio study in the equalization process is a matter which the legislature has reposed in the department. *See* Iowa Code § 441.47 (1983). This, no doubt, was done in recognition of the specialized competence, knowledge, experience and general expertise possessed by that agency. Such are the considerations which have traditionally resulted in judicial deference absent the clear presence of circumstances such as those listed in Iowa Code section 17A.19(8). *See* 2 Am.Jur.2d *Administrative Law* § 633 (1962). Our cases recognize the necessity that we accord proper respect to the expertise of the administrative agency. *Iowa Health Syst. Agency v. Wade*, 327 N.W.2d 732, 733 (Iowa 1982). We are not convinced that countervailing circumstances are present here and accordingly reject petitioners' first argument.

III. Similar considerations lead us to reject petitioners' second contention: that the use by the department of twenty-five appraisals and only seven sales in the sales/assessment ratio study was improper. We note that while the department's procedural manual discloses its general policy of attempting to use a minimum of ten sales, using less than ten violates no agency rule. These rules provide only that appraisals may be used in conjunction with the sales/assessment data. 701 I.A.C. 71.-12(3)(a). We do not think it appropriate for this court to prescribe what methodology an administrative agency must use in performing its statutory duties. They have chosen their own methodology and, we think, have followed it here. Our task is limited to a review for legal errors, *Fer-*

*nandez v. Iowa Dep't of Human Servs.*, 375 N.W.2d 701, 705 (Iowa 1985), and we cannot say that such an error has occurred as alleged by petitioners' second claim.

IV. Petitioners next argue that the department's method of appraising the twenty-five properties violated Iowa Code section 441.21 (1983). The pertinent portions of that section provide as follows:

The actual value of all property subject to assessment and taxation shall be the fair and reasonable market value of such property except as otherwise provided in this section. "Market value" is defined as the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property. Sale prices of the property or comparable property in normal transactions reflecting market value, and the probable availability or unavailability of persons interested in purchasing the property, shall be taken into consideration in arriving at its market value. In arriving at market value, sale prices of property in abnormal transactions not reflecting market value shall not be taken into account, or shall be adjusted to eliminate the effect of factors which distort market value, including but not limited to sales to immediate family of the seller, foreclosure or other forced sales, contract sales, discounted purchase transactions or purchase of adjoining land or other land to be operated as a unit.

. . . .

In the event market value of the property being assessed cannot be readily established in the foregoing manner, then the assessor may determine the value of the property using the other uniform and recognized appraisal methods including its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable

market value of the property but the actual value shall not be determined by use of only one such factor.

Both parties proceed on the assumption that this section applies not only to local assessors but also to the department of revenue. We need not determine the merits of this assumption in the present appeal as, even assuming its correctness, we agree with respondents that the statute's provisions were not violated here.

█ Our cases provide that in determining the value of property under this statute, consideration must first be given to the sale prices of the property in question or of comparable property. *E.g., Ruan Center Corp. v. Board of Review,* 297 N.W.2d 538, 540 (Iowa 1980). If and only if this approach cannot readily establish a market value because there have been no comparable sales, the "other factors" approach of section 441.21 must be used. *Id.* This approach, as outlined above, arrives at market value by considering earning capacity, industrial conditions, cost, depreciation, replacement cost and "all other factors which would assist in determining the fair and reasonable market value." Iowa Code § 441.21(1) (1983); *see Ruan Center Corp.,* 297 N.W.2d at 540; *Equitable Life Ins. Co. v. Board of Review,* 281 N.W.2d 821, 823 (Iowa 1979). When employing the other factors approach, use must be made of more than one of the factors. Iowa Code § 441.21(2) (1983); *Ruan Center Corp.,* 297 N.W.2d at 540.

The present case involved the use of the other factors approach. Petitioners allege that the department violated the statute by using only one method—the "cost approach"—to determine the value of the appraisal property. The appraisers testified before the agency, however, that they had used several of the section 441.21(2) factors in their attempts at determining value. In addition to comparable sales, the appraisers testified that consideration was given to cost, physical depreciation, functional obsolescence, location, and other factors effecting market value. The Supervisor of the Appraisal Section of the Property Tax Division of the Department of Revenue testi-

fied that he reviewed the appraisers' testimony and determined that the cost approach was not the only approach considered. We note that the statutory "other factors" approach mandates the consideration of two or more particular factors in determining value. Section 441.21(2) does not require that market value be determined by the use of two or more methods of valuation, *i.e.*, market data method, cost method, or income method. *See Equitable Life Ins.*, 281 N.W.2d at 825. The agency determined that the department had sufficiently followed the statute. The district court, on judicial review, agreed with that conclusion. Our task here is to correct errors of law made by the district court. *Women Aware v. Reagen,* 331 N.W.2d 88, 90 (Iowa 1983). We do not believe such a legal error was made as concerns this issue. Accordingly, we reject petitioners' argument to the contrary.

█ V. Finally, petitioners maintain the procedure used by the department to select appraisal properties was improper and resulted in an unrepresentative sample. This, argue petitioners, is because the properties were chosen at random from the entire relevant population without subdividing or stratifying the commercial class of properties. Again, we note our reluctance to engage in a prescription of appropriate agency methodology. *See Iowa Health Syst. Agency,* 327 N.W.2d at 733. It suffices to say that the proposed appraisal properties were shown to petitioner assessor's office prior to the appraisals being used in the study, and that no objections to the properties were made at that time. While the petitioner assessor testified to having objected to the properties "after we got into preparing our case," such a belated response is contrary to the system established by administrative rule. *See* 730 Iowa Administrative Code 71.12(3)(b). We find no error.

The district court is affirmed.

AFFIRMED.