**H & R PARTNERSHIP, Timothy S. Kniffen, Pride, L.L.P., Scott Schager, and Southland Pork, L.C., Appellants,**

v.

**DAVIS COUNTY BOARD OF REVIEW, David William Hardy, Chairman, Appellee.**

No. 00–0275.

Supreme Court of Iowa.

Dec. 18, 2002.

Robert P. Malloy of Malloy Law Firm, Goldfield, and Deborah M. Tharnish of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellants.

Frank W. Pechacek, Jr. and Michael J. Davenport of Willson & Pechacek, P.L.C., Council Bluffs, and Rick L. Lynch, County Attorney, Bloomfield, for appellee.

Thomas J. Miller, Attorney General, and Harry M. Griger, Special Assistant Attorney General, and James D. Miller, Assistant Attorney General, for amicus curiae, Iowa Department of Revenue.

PER CURIAM.

H & R Partnership, Timothy S. Kniffen, Pride, L.L.P., Scott Schager, and Southland Pork, L.C., who are Davis County property owners on whose land swine confinement facilities have been constructed, appeal from the district court's judgment upholding the property tax assessment on their respective parcels. On May 8, 2002, we filed an opinion in this case disposing of the issues raised on appeal. The appellants then filed a petition for rehearing, which was granted. The prior opinion, which was not published, has been withdrawn. After again reviewing the record and considering the arguments presented, including the arguments on rehearing, we modify the district court's decree and remand for further proceedings.

The assessments in question were made in January of 1998 and January of 1999. Swine confinement facilities had recently been constructed on the parcels in question. The individual assessments that are involved are as follows:

H & R Partnership (1998)

| | Land | Buildings | Total |
|---|---|---|---|
| Parcel 1 | $5923 | $ 453,086 | $ 459,009 |
| Parcel 2 | $3851 | $ 461,025 | $ 464,876 |
| Parcel 3 | $2625 | $ 245,456 | $ 248,081 |

H & R Partnership (1999)

| Parcel 1 | $5645 | $ 304,779 | $ 310,424 |
|---|---|---|---|
| Parcel 2 | $7186 | $ 312,731 | $ 319,917 |
| Parcel 3 | $5205 | $ 392,969 | $ 398,174 |

Timothy S. Kniffen (1998)

| Parcel 1 | $3142 | $ 453,086 | $ 456,228 |
|---|---|---|---|

Timothy S. Kniffen (1999)

| Parcel 1 | $3812 | $ 312,409 | $ 316,221 |
|---|---|---|---|

Pride L.L.P. (1998)

| Parcel 1 | $4946 | $ 453,086 | $ 458,032 |
|---|---|---|---|
| Parcel 2 | $6309 | $ 453,086 | $ 459,395 |

Pride L.L.P. (1999)

| Parcel 1 | $7654 | $ 307,182 | $ 314,836 |
|---|---|---|---|
| Parcel 2 | $4639 | $ 310,271 | $ 314,910 |

Scott Schager (1998)

| Parcel 1 | $2649 | $ 453,086 | $ 455,735 |
|---|---|---|---|

Scott Schager (1999)

| Parcel 1 | $3213 | $ 310,271 | $ 313,484 |
|---|---|---|---|

Southland Pork, L.C. (1998)

| Parcel 1 | $5439 | $ 527,092 | $ 532,531 |
|---|---|---|---|
| Parcel 2 | $3563 | $ 229,343 | $ 232,906 |

Southland Pork, L.C. (1999)

| Parcel 1 | $4323 | $ 160,275 | $ 164,598 |
|---|---|---|---|
| Parcel 2 | $6992 | $1,276,127 | $1,283,119 |

In their respective protests to the board of review, the property owners only objected to that portion of the assessments allocated to the buildings. The basis for each of the protests was that the amount of the assessment allocated to the buildings exceeded that authorized by law. An alternative amount deemed by the property owners to be a fair assessment was proposed in the protest. The board of review denied the protests and confirmed the assessor's valuations.

In their appeal to the district court pursuant to Iowa Code section 441.38 (1997), the property owners continued to challenge only the valuation placed on the buildings. After a trial in equity, the district court upheld the determinations of the assessor and board of review.

## I. *Scope of Review.*

The trial of assessment appeals in the district court is by equitable proceedings. Iowa Code § 441.39. Consequently, our review is de novo. Iowa R.App. P. 6.4. No presumption exists that the assessor's valuation is correct. *Eagle Food Ctrs., Inc. v. Bd. of Review of City of Davenport,* 497 N.W.2d 860, 863 (Iowa 1993); Iowa Code § 441.39.

## II. *The Property Owners' Arguments.*

On appeal the property owners contend that the assessed value allocated to the buildings is, in each instance, not correct. The arguments made for relief from this court are that (1) the assessor failed to take into account the productivity and net-earning capacity criteria for valuing agricultural real estate pursuant to Iowa Code section 441.21(1)(e); (2) the assessments improperly included the value of removable personal property; (3) the formula applied in valuing the buildings relied on inaccurate data concerning comparable sales; (4) the amount of the assessments are excessive when compared to the valuations of similar facilities by assessors in other counties; (5) the Iowa Department of Revenue and Finance failed to adopt a rule embracing the formula used to allocate value to the buildings; and (6) in using cost of construction as a measure of value, the board of review and district court relied on average costs and ignored evidence of actual costs. We separately consider these contentions.

■ A. *Productivity criteria of section 441.21(1)(e).* In assessing agricultural property,

> [t]he actual value of agricultural property shall be determined on the basis of productivity and net earning capacity of the property determined on the basis of its use for agricultural purposes capitalized at a rate of seven percent and applied uniformly among the counties and among classes of property. Any formula or method employed to determine productivity and net earning capacity of property shall be adopted in full by rule.

Iowa Code § 441.21(1)(e).

The assessment of the property owners' lands and buildings in the present case involved the application of a process established in Iowa Administrative Code rule 701–71.12(1) (1997), promulgated by the Iowa Department of Revenue and Finance. The first step in that process is to calculate the total crop-producing value for the county. The assessor begins this process by examining the county's per-acre crop-producing value as computed by the Iowa Department of Revenue and Finance. That agency reviews each county's crop yields and gross crop-production income over a five-year period. The county's total gross income is then reduced by the aggregate production costs. The agency then adjusts this net figure to account for real estate taxes and, then, to comport with Iowa Code section 441.21(1)(e), capitalizes the resulting value at the rate of seven percent.

The assessor arrives at the county's total crop-producing value by multiplying the per-acre crop-producing value derived by the Iowa Department of Revenue and Finance by the total number of crop-producing acres in the county. This figure represents the total productivity value of both land and improvements within the county.

In order to obtain a valuation for the improvements (buildings) on the land, the assessor values the improvements on each separate parcel other than dwelling houses in the county at market value (derived on the basis of replacement cost). This valuation is then adjusted to conform to the ratio between the fair market value of all agricultural real estate in the county and the productivity valuation of such real estate that has been computed pursuant to rule 701–71.12(1). Dwelling houses are valued as ordinary real property. This adjusted value constitutes the assessed valuation of the agricultural buildings on each individual tract. The total valuation of all buildings within the county, so derived, is then subtracted from the total crop-production value of all land and buildings as computed under rule 701–71.12(1) to establish the aggregate value of the bare land.

This aggregate value is spread to each parcel to be assessed in proportion to the ratio of the corn-suitability rating of the particular tract to the sum of all corn-suitability ratings within the county.[1] That computation establishes the valuation of the land on each parcel and is stated separately from the valuation of the buildings on that parcel. The separate assessment of land and buildings is dictated by Iowa Code section 441.21(7) (renumbered as section 441.21(6) in Iowa Code 2001).

The property owners urged that this method of appraisal does not comport with the criteria established in section 441.21(1)(e). They contend that the assessment should be based on the productivity value of their property as a swine-producing operation. We disagree. As the board of review urges, consideration of the productivity value of livestock operations on these parcels is an unsatisfactory criteria for assessing agricultural land because it involves the profits derived from a business being carried on upon the land rather than the productivity value of the land itself.

Section 441.21(1)(e) expressly authorizes the Iowa Department of Revenue and Finance to fashion a formula in accordance with that statute for the valuation of agricultural property. We are satisfied that the formula set forth in rule 701–71.12(1) provides a reasonable application of the productivity, net-earning capacity, and seven percent capitalization criteria established by section 441.21(1)(e). We also conclude that the procedure applied for allocating the aggregate productivity valuation of land and buildings within the county between land and buildings resulted in a reasonable assessment of the buildings if the market value of the buildings (based on replacement cost) was accurately determined by the assessor. That issue will be discussed later in this opinion.

**B.** *Inclusion of personal property.* The property owners urge that the challenged assessments improperly included the value of removable personal property. Based on the evidence, the district court concluded that the "attached property is integral to the use of these specialized buildings and is properly assessed for real estate taxation purposes." Evidence was offered suggesting that the items that the taxpayers claim to be removable personal

---

1. Apportioning the county-wide productivity valuation of the bare land to each parcel within the county in accordance with the corn-suitability rating of each parcel is consistent with Iowa Code section 441.21(1)(f), which provides:

> In counties or townships in which field work on a modern soil survey has been completed since January 1, 1949, the assessor shall place emphasis upon the results of the survey in spreading the valuation among individual parcels of such agricultural property.

property had a relatively short useful life and that the cost of moving them would discourage that effort. We agree with the district court's conclusion that, to the extent this property was considered in determining the market value of these buildings prior to the agricultural adjustment, this was proper under the circumstances.

██ C. *Use of comparable sales in adjusting the market value of the buildings to accord with productivity value.* In comparing the board of review's comparable sales data with that of the property owners for purposes of adjusting the market value of the buildings to accord with productivity value, it is apparent that both sets of valuation data suffer from certain defects. The defect in the board of review's comparable sales data was that it was not current. The defect in the property owners' comparable sales data was that it did not screen out sales that were not arm's-length transactions, as did the board of review's comparable sales data. The burden of proof on this issue rested with the property owners, and they have failed to show that their evidence of comparable sales was superior to the evidence relied on by the assessor and board of review. We uphold the district court's finding that the valuations used to compute the agricultural adjustment to the market value of the taxpayers' buildings have not been shown to be inaccurate. These valuations produce an agricultural adjustment of fifty-five percent of market value.

██ D. *Lower building valuations on comparable facilities in other counties.* The mere fact that similar facilities were shown to have been allocated a lesser assessed value in other counties does not offer a basis for granting relief to these property owners. This comparison is of no use in the absence of some demonstration that the productivity and net-income fac-tors used in rule 701–71.12(1), the comparable sales data used in the agricultural adjustment, and the production costs utilized in the determination of building values were similar. This data has not been supplied, and the failure to produce it works to defeat the property owners' claim on this issue.

██ E. *Failure to adopt a rule governing allocation of aggregate assessment between land and buildings.* The property owners contend that section 441.21(1)(e) requires the Iowa Department of Revenue and Finance to pass a rule for purposes of establishing a formula for allocating value to the buildings. That contention is not correct. The rule that is required by section 441.21(1)(e) is in regard to establishing the formula for assessment of land and buildings in combination based on productivity and net-earning capacity. Rule 701–71.12(1) does that. Although there are other steps in the assessment process, the determination of productivity and net-earning capacity that is central to all assessment decisions is derived in accordance with a formula adopted by rule. This is all that section 441.21(1)(e) requires.

██ F. *Failure to use actual construction costs.* The property owners' final argument concerns the assessor's utilization of typical construction costs to establish replacement costs rather than the actual construction costs of the buildings being assessed. As we have noted, an essential step in the process of assessing agricultural buildings is to arrive at the market value of the buildings. Although that value is later adjusted, the adjusted value will only be correct if the determination of the buildings' market value is accurate. In the present case both sides have sought to establish the market value of the buildings by establishing their replacement cost.

 The difficulty in obtaining actual costs may justify the use of typical costs in making hundreds of assessments. But when the assessor's determination of the market value of the buildings is challenged, the board of review may not answer that challenge merely by showing that the assessor followed the prescribed procedure adopted by the Iowa Department of Revenue and Finance. The issue to be decided is whether the valuation established by the assessor does in fact reflect the correct market value of the buildings. The most credible measure of value that is shown by the evidence should prevail. *See Valley Forge Apartments v. Bd. of Review*, 239 N.W.2d 148, 151 (Iowa 1976) (court may not refuse property owners' cost figures simply because they conflict with those of the assessor).

 The property owners submitted evidence of what the actual costs of construction for these buildings had been. For purposes of the 1998 assessments, the buildings were newly constructed and neither side contends that depreciation was a factor in making a replacement-cost valuation. The board of review argues that the cost of construction submitted by the taxpayers is incomplete and does not include site-preparation costs. The board also urges that the fact that these taxpayers may have been able to build their facility at less cost than the typical costs utilized by the assessor does not mean that the assessor's costs are not an accurate measure of the market value of the buildings. As to the first argument, the board's own expert witness, who helped prepare the assessors' manual for the Iowa Department of Revenue and Finance, expressed doubt as to whether site-preparation costs are properly considered in assessing agricultural buildings. We need not decide that question because we are satisfied that the board is correct in urging that, if the typical construction costs applied in the assessment process are found to be accurate, they serve as a better measure of the cost of reproduction than the actual construction cost to a particular property owner.

Robert Ehler, the board's expert witness, testified that he had assisted the Iowa Department of Revenue and Finance in preparing its 1998 real property appraisal manual. In so doing, he gained familiarity with building costs of structures similar to those involved in the present controversy. He and the others working with him on the project obtained costs from the suppliers of construction material and labor costs. They established the typical completion time of various building projects. They reviewed actual costs of thousands of buildings throughout the state. Based upon that investigation, they developed typical costs per square foot for various types of construction. These were then adjusted up or down, based on perceived deviations in the ninety-nine counties throughout the state.

The 1998 assessors' manual came out one month after the assessment of the taxpayers' agricultural property. The assessor had utilized construction costs contained in the 1984 real property appraisal manual and adjusted them upward by twenty percent to account for inflation. Ehler tested the assessor's figures against the costs of construction for buildings similar to the taxpayers' as shown in the 1998 manual (adjusted for Davis County), which were current with the appraisals that we are considering. He found very slight deviations. These deviations are revealed in Ehler's determination of the cost of reproduction for the taxpayers' property using the data in the 1998 manual adjusted for Davis County. His conclusions are listed in the same order as the list of assessed values set forth earlier in this opinion:

H & R Partnership (1998)

| | Buildings |
|---|---|
| Parcel 1 | $740,233 |
| after agricultural adjustment | $407,128 |
| Parcel 2 | $759,419 |
| after agricultural adjustment | $417,680 |

Timothy S. Kniffen (1998)

| | |
|---|---|
| Parcel 1 | $759,419 |
| after agricultural adjustment | $417,680 |

Pride L.L.P. (1998)

| | |
|---|---|
| Parcel 1 | $759,419 |
| after agricultural adjustment | $417,680 |
| Parcel 2 | $759,419 |
| after agricultural adjustment | $417,680 |

Scott Schager (1998)

| | |
|---|---|
| Parcel 1 | $759,419 |
| after agricultural adjustment | $417,680 |

Southland Pork, L.C. (1998)

| | |
|---|---|
| Parcel 2 | $386,363 |
| after agricultural adjustment | $212,500 [2] |

In each of the instances shown above, Ehler's determination of the replacement cost of the taxpayers' buildings, when reduced by the fifty-five percent agricultural adjustment factor utilized by the Davis County assessor, results in a lower valuation of the taxpayers' buildings in 1998 than was established by the assessor.

Ehler testified that he believed the productivity value of the land and buildings was at least as high as found by the assessor. This contention involved the consideration of factors not utilized in the assessment formula derived by the Iowa Department of Revenue and Finance and used by the Davis County Assessor in the present case. Moreover, it was partially based on livestock production, which we have rejected as an element of productivity to be considered in assessing property under section 441.21(1)(e). However, focusing only on Ehler's determination of the cost of reproduction of these buildings, that determination was based on the proper elements and the most current data available. We conclude that Ehler's assessment of the cost of reproduction of the buildings is the most credible evidence in the record with respect to that issue.

If we consider Ehler's replacement-cost computations for the buildings and use the same agricultural adjustment employed by the assessor, this results in the valuations that we have shown above.

 The property owners are entitled to challenge the assessments on the same basis that the assessor made them and that the board of review seeks to uphold them in this litigation. We have upheld the assessor's use of a fifty-five percent agricultural adjustment to the replacement cost of the buildings to obtain their productivity value. Because we find that Ehlers' determination of replacement cost for these buildings is the most credible evidence on that issue, the taxpayers are entitled to a reduction in the valuation of their buildings consistent with the figures set forth above following the phrase "after agricultural adjustment." The case will be remanded to the district court for an order so providing.

The changes that have been ordered in the valuation of the buildings will result in some change in the valuation of the taxpayers' bare land. This will require a complex computation. This determination shall be made in the district court and settled by decree pursuant to Iowa Code section 441.39. *See Sevde v. Bd. of Review,* 434 N.W.2d 878, 881 (Iowa 1989)

---

2. Ehler's computations with respect to parcel one of the Southland Pork, L.C. assessment are not compatible with the assessor's data. To the extent we can apply these valuations, they suggest a higher replacement cost for the buildings than was found by the assessor. We do not disturb the assessor's valuation of the buildings on this parcel.

(court must order county auditor to correct assessment using specific valuations). Following remand, the district court, with the assistance of counsel for the parties, shall also calculate the change necessary in the 1999 assessment as a result of the new valuations for the 1998 assessment.

Costs are assessed thirty percent to appellants and seventy percent to appellees.

**AFFIRMED AS MODIFIED AND REMANDED.**